```
            UNITED STATES DISTRICT COURT
         SOUTHERN DISTRICT OF WEST VIRGINIA
                   AT CHARLESTON
```

CALVIN DUNLAP and
TAMMY DUNLAP

    Plaintiffs

v.                                    Civil Action No.: 2:05-0311

GREEN TREE SERVICING, LLC

    Defendant

## MEMORANDUM OPINION AND ORDER

Pending before the court is the motion of plaintiffs Calvin and Tammy Dunlap ("Dunlaps"), filed May 6, 2005, seeking remand of this matter to the Circuit Court of Kanawha County, West Virginia, on the grounds that the amount in controversy for diversity jurisdiction has not been met.[1]

I.

The complaint alleges in April of 1999, the Dunlaps purchased a 1999 Bluegrass Housing manufactured home that was

---

[1] Also pending before this court is defendant's motion to compel arbitration or, alternatively, to dismiss or stay proceedings. The court will address this motion by order entered this same day.

financed, in part, by a loan from Green Point Credit Corp[2] ("Green Point").  Compl. at ¶ 4.  On July 17, 2000, Green Point allegedly force-placed "hazzard" insurance on the Dunlaps' account.  Id. at ¶ 6.  The annual premium on this policy was $1,478, but Green Point cancelled the insurance policy in December of 2000, and the Dunlaps were only required to pay approximately $400 of the original $1,478 premium.  Id. at ¶¶ 6,7.  In June 2001, Green Point again force-placed "hazzard" insurance on the Dunlaps' account.  Id. at ¶ 8.  In this instance, the Dunlaps were charged all of the $1,478 annual premium.  Id.

In January, 2004, Green Point allegedly force-placed insurance on the Dunlaps' account for a third time.  Id. at ¶ 9.  After the Dunlaps sought to renew their own insurance policy, Green Point allegedly misrepresented that two policies could not be on the house at the same time.  Id.  The premium on this insurance policy was $1,659.00, and raised the Dunlaps monthly payment from $458.17 to $625.00.  Id. at ¶ 10.  The Dunlaps were unable to pay the higher amount.  Id.

Around November 1, 2004, Green Tree Servicing, LLC

---

[2] Defendant, Green Tree Servicing, LLC ("Green Tree"), is Green Point's successor.

("Green Tree") became the new servicer of the Dunlaps' loan, and shortly thereafter, represented the Dunlaps owed $64,455.66, an amount that exceeded the balance of the initial loan by over $4,000.00.  Id. at ¶ 13.  In December 2004, Green Tree allegedly force-placed insurance in the amount of $1,316.84.  Id. at ¶ 14.  In addition to the four instances of force-placing insurance, the complaint further alleges both Green Point and Green Tree illegally pyramided late charges, in violation of West Virginia Code § 46A-3-112.  Id. at ¶ 16.

On March 9, 2005, the Dunlaps commenced a civil action against Green Tree in the Circuit Court of Lincoln County.  Count I alleges Green Point and Green Tree violated the duty of good faith and fair dealing by force-placing excessive and overpriced insurance, illegally pyramiding late fees, placing the Dunlaps account in default, and servicing the loan in bad faith.  Count II asserts the insurance imposed by Green Point and Green Tree was unnecessary, excessively priced, and unreasonable in violation of the West Virginia Consumer Credit and Protection Act ("WVCCPA") West Virginia Code § 46A-3-109(b).  Count III contends Green Point and Green Tree engaged in illegal debt collection by allegedly misrepresenting the amount of a claim in violation of West Virginia Code § 46A-2-127(d).

Under Count I, the Dunlaps seek declaratory judgment, actual and punitive damages, and reasonable attorney fees.  With respect to Counts II and III, the Dunlaps do not seek punitive damages, rather the imposition of a $3,900 civil penalty pursuant to § 46A-5-101(1) and § 46A-5-106 for each violation of the WVCCPA.  The Dunlaps also seek declaratory judgment, actual damages, and reasonable attorney fees under Counts II and III.

On April 13, 2005, Green Tree removed the action to this court on the grounds complete diversity existed at the time of removal and the amount in controversy exceeded $75,000.  Green Tree notes the Dunlaps claim that force-placing excessive and overpriced insurance on their accounts four times entitles them to a statutory penalty of $3,900 for each of the four violations.  Additionally, Green Tree points out that the Dunlaps claim Green Tree misrepresented the amount of a claim, to which they allege they are entitled to another statutory penalty of $3,900.  Finally, Green Tree contends the Dunlaps further seek punitive damages for the breach of the duty of good faith and fair dealing and attorney fees.[3]  Accordingly, Green Tree calculates the

---

[3] While Green Tree also contends that the Dunlaps seek an additional $3,900 statutory penalty for illegally assessed late fees, the Dunlaps actually placed the allegations of illegally assessed late fees in Count I which does not seek the imposition of a statutory penalty.

Dunlaps' compensatory and statutory damages as $24,353.85, before considering attorney fees, unspecified claims for damages, and punitive damages.[4] Id. at 5.

The Dunlaps seek remand contending Green Tree has failed to demonstrate the amount in controversy exceeds $75,000. In support, the Dunlaps suggest this case only involves three instances of force-placing insurance totaling less than $4500 and pyramiding late fees with each late fee being five dollars.[5] In their reply, the Dunlaps further assert (1) for the purposes of calculating the amount in controversy attorneys fees should be calculated at the time the petition for removal was filed and, (2) even with punitive damages factored into the calculation, the amount in controversy does not approach 75,000.[6]

---

[4]Defendant adds $4,853.84 in force-placed insurance premiums to $19,500 (representing 5 statutory penalties at $3,900) to arrive at $24,353.84.

[5]In their memorandum, the Dunlaps repeatedly assert that there were only three instances of force-placing insurance; however, the complaint clearly identifies four separate allegations of force-placing insurance. Compl. ¶ 6,8,9,14.

[6]The Dunlaps add the first three instances of force-placing insurance and $300 in late fees to arrive at $3,837. Then, the Dunlaps use a multiplying factor of 9, which they say is the highest single digit multiplier permitted by the Supreme Court under State Farm Mutual Automobile Insurance Co. v. Campbell, 538 S.Ct. 408 (2003), to reach the conclusion that the total amount in controversy would still reach only $38,370 ($3,837 x 9=$34,533 + $3,837= $38,370). These calculations are more fully discussed

## II.

Subject to limited exceptions, a defendant may transfer a case from state court to federal court if the action is one "of which the district courts of the United States have original jurisdiction." 28 U.S.C.A. § 1441(a). Federal district courts have original jurisdiction of actions between citizens of different states in which the "matter in controversy" exceeds the value of $75,000, exclusive of interest and costs. 28 U.S.C.A. § 1332(a). Because the citizenship of the parties is not in dispute, the court need only determine whether the amount in controversy is satisfied.

In a case that is filed initially in federal court, a district court has original jurisdiction if the requisite diversity of citizenship exists unless it "appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount." St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938). However, the "legal certainty" test applies only in instances in which a plaintiff invokes federal jurisdiction by filing a case in federal court. Landmark Corp. v. Apogee Coal Co., 945 F. Supp. 932, 935 (S.D. W.Va.

---

infra.

1996). A different test applies "in removal situations like this one in which the plaintiff has made an unspecified demand for damages in state court." Id. A defendant who removes a case from state court in which the damages sought are unspecified, asserting the existence of federal diversity jurisdiction, must prove by a preponderance of the evidence that the value of the matter in controversy exceeds the jurisdictional amount. Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353, 1357 (11th Cir. 1996); Gaus v. Miles, Inc., 980 F.2d 564, 567 (9th Cir. 1992); Sayre v. Potts, 32 F. Supp.2d 881, 885 (S.D. W.Va. 1999); Landmark Corp., 945 F. Supp. at 935.

Removal statutes must be construed in light of the federalism concerns that animate the policy of strictly confining federal jurisdiction within the congressionally-set limits. Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09 (1941). "The policy of the statute calls for its strict construction." Healy v. Ratta, 292 U.S. 263, 270 (1934). A case must be remanded if federal jurisdiction is doubtful. Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994); see also Able v. Upjohn Co., 829 F.2d 1330, 1332 (4th Cir. 1987), cert. denied, 485 U.S. 963 (1988) (stating that "congressional desire to restrict removal has been understood to require that

doubts about the propriety of removal be resolved in favor of retained state court jurisdiction").

In addressing the propriety of federal jurisdiction in a removal action, the court must base its decision on the record existing at the time the petition for removal was filed. <u>Red Cab</u>, 303 U.S. at 291. In particular, "the amount in controversy is determined by considering the judgment that would be entered if the plaintiff prevailed on the merits of his case as it stands at the time of removal." <u>Sayre</u>, 32 F. Supp.2d at 886 (<u>citing</u> <u>Landmark Corp.</u>, 945 F. Supp. at 936-37); <u>see also</u> <u>Hutchens v. Progressive Poloverde Insurance Co.</u>, 211 F.Supp.2d 788, 791 (S.D. W.Va. 2002) (citation omitted). In calculating that amount, the court may consider the "'entire record before it and make an independent evaluation'" of whether the amount in controversy is satisfied. <u>Sayre</u>, 32 F. Supp.2d at 886 (<u>citing</u> <u>White v. J.C. Penney Life Ins. Co.</u>, 861 F. Supp. 25, 27 (S.D. W.Va. 1994) (citation omitted)).

III.

A. <u>Compensatory Damages</u>

The Dunlaps contend the amount of compensatory damages

are merely $3,837.  In arriving at this figure, the Dunlaps note the defendant force-placed insurance three times in the amount of $1,478, $1,478, and $1,659 for a total of $4,615.  However, $1,078 of the premium in the first instance was refunded, which reduces the total amount of force-placed insurance to $3,537.  In addition to this $3,537, the Dunlaps add $300 as the maximum amount of $5 monthly late fees the plaintiff may have been charged over the five year contract to arrive at a total actual compensatory damages figure of $3,837.

Green Tree contends the compensatory damages figure is higher.  Green Tree notes that under the allegations of the complaint, plaintiffs claim they were forced to pay $4,853.84 in excessive and overpriced insurance premiums.  In arriving at this figure, Green Tree points out the complaint alleges the plaintiffs were required to pay $400.00 and $1,478.00 in insurance premiums on the first two occasions.[7]  On the last two occasions, plaintiffs claim they were forced to pay $1,659.00 and $1,316.84.  The sum of these figures is $4,853.84.

The calculations of compensatory damages differ,

---

[7]Green Tree's $400 figure for the first instance of force-placed insurance reflects only the portion the Dunlaps allegedly paid out of the original $1,458 policy.

inasmuch as the Dunlaps' calculations do not include the alleged fourth occasion on which Green Tree force-placed an insurance policy in the amount of $1,316.84, and Green Tree's calculations do not include the $300 in late fees allegedly assessed.[8] Assuming the Dunlaps completely paid for all four of the alleged force-placed insurance policies, and a late fee was charged every month over the five year period of the contract, the Dunlaps compensatory damages would be $5,153.84.

    B.    <u>Statutory Penalties</u>

The Dunlaps allege Green Tree violated West Virginia Code § 46A-3-109(b) four times when it force-placed insurance and violated West Virginia Code § 46A-2-127(d) once when it misrepresented the amount of a claim. Accordingly, the Dunlaps seek a statutory penalty in the amount of $3,900 for each of the alleged violations pursuant to West Virginia Code § 46A-5-101.

The remedial provisions for a violation of § 46A-3-109(b) and § 46A-2-127(d) are found in §§ 46A-5-101, <u>et seq.</u>

---

[8] The complaint alleges Green Tree force-placed a $1,316.84 insurance policy in December, 2004. It is unclear from the pleadings as to how much the Dunlaps actually paid on any of the allegedly force-placed policies. The complaint asserts the Dunlaps were unable to pay the higher monthly payment after January, 2004.

Section 46A-5-101, insofar as possibly pertinent here, provides that:

> If a creditor has violated the provisions of this chapter applying to collection of excess charges... illegal, fraudulent or unconscionable conduct, [or] any prohibited debt collection practice, ... the consumer has a cause of action to recover actual damages and in addition a right in an action to recover from the person violating this chapter a penalty in an amount determined by the court not less than one hundred dollars nor more than one thousand dollars.

W. Va. Code § 46A-5-101. There is authority that each violation of § 46A-5-101 creates a single cause for recovery of a single penalty. Strum v. Providian Nat'l Bank, 242 B.R. 599, 603 (S.D. W. Va. 1999) (finding that the 13 separately alleged violations of the debt collection provisions of the WVCCPA may be aggregated for purposes of determining the amount in controversy). Moreover, a civil penalty imposed by the court may, in the court's discretion, be adjusted for inflation since September 1, 1974, in an amount equal to the consumer price index. W. Va. Code § 46A-5-106. Here, the Dunlaps seek the imposition of civil penalties in the amount of $3,900 for each violation.[9]

---

[9]The Dunlaps filed a supplemental memorandum in support of remand, in which they note the statutory maximum penalty adjusted for inflation was $3,840 as of June 10, 2005. With the discretionary increase for inflation the court could impose a civil penalty between $384 and $3,840 for each of the five violations.

The Dunlaps allege five separate statutory civil penalties.  Adjusted for inflation, and using the Dunlaps' amended figures for the maximum penalty, the Dunlaps would be entitled to statutory penalties in the amount of $1,920 to $19,200 if they were to succeed on every alleged violation.

### C. <u>Punitive damages</u>

In addition to compensatory and statutory damages, punitive damages may be included for the purpose of determining the amount in controversy.  14B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3702 (3d ed. 1998) ("A long line of decisions clearly establishes the proposition that exemplary or punitive damages, when they are permitted to be awarded under the governing substantive law for the claim being asserted by the plaintiff, can be included in determining whether the jurisdictional amount in controversy requirement has been met.").  Of course, "claims for punitive damages proffered for the purpose of achieving the jurisdictional amount should be carefully examined."  <u>Saval v. BL Ltd.</u>, 710 F.2d 1027, 1033 (4th Cir. 1981).  The issue of whether a plaintiff has pled in good faith a claim for punitive damages is dependent upon his state causes of action.  14B Charles Alan Wright & Arthur R. Miller,

Federal Practice and Procedure § 3702 (3d ed. 1998). In determining the amount of punitive damages, it is noted that, in the recent case of <u>State Farm Mutual Automobile Insurance Co. v. Campbell</u>, 538 S.Ct. 408 (2003), the United States Supreme Court examined the relationship of punitive damages to compensatory damages and suggested in <u>dicta</u> that single digit ratios are presumptively valid. <u>Id.</u> at 1524.

The Dunlaps concede that for purposes of determining the amount in controversy, punitive damages are part of the calculation. However, the Dunlaps argue that even with a 9 to 1 ratio of punitive damages to compensatory damages, the resulting punitive damages award will only amount to $34,533.00. In arriving at this number, the plaintiffs rely on their original erroneous computation of compensatory damages at $3,837.00. The court finds that using the higher compensatory damages figure of $5,153.84, the punitive damages on a 9 to 1 ratio would reach $46,384.56.

D. <u>Attorney Fees</u>

Green Tree contends attorney fees should be taken into consideration when determining the amount in controversy. For the purpose of calculating attorney fees, Green Tree points out

13

that in a recent civil action, plaintiffs' counsel indicated the market rate in this community for an attorney with his years of specialized experienced was $300 to $450 dollar an hour. Accordingly, Green Tree notes that if plaintiffs' counsel were to invest only a 40 hour work week, the claim for fees would range from $12,000 to $18,000. Id.

The Dunlaps dispute this contention, and assert that potential attorney fees may not be used to determine the amount in controversy. Instead, they argue, attorney fees should be calculated at the time the petition was filed.

As a general rule, attorney fees are excludable in determining the amount in controversy for purposes of a diversity suit, but there are exceptions where the fees are provided for by contract or where a statute mandates or allows the payment of such fees. See Spielman v. Genzyme Corp., 251 F.3d 1, 7 (1st Cir. 2001); see also Manguno v. Prudential Property & Cas. Ins. Co., 276 F.3d 720, 723 (5th Cir. 2002) ("[i]f a state statute provides for attorney's fees, such fees are included as part of the amount in controversy."); Galt G/S v. JSS Scandinavia, 142 F.3d 1150, 1156 (9th Cir. 1998) ("[w]e hold that where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be

14

included in the amount in controversy."); <u>Velez v. Crown Life Ins. Co.</u>, 599 F.2d 471, 474 (1st Cir. 1979) ("[t]here are however, two logical exceptions to [the general] rule [that attorney's fees are excludable]: one where the fees are provided for by contract, and two, where a statute allows or mandates the payment of such fees."); <u>cf.</u> <u>Saval v. BL Ltd.</u>, 710 F.2d 1027, 1033 (4th Cir. 1983) (recognizing that courts have considered attorney fees as part of the jurisdictional amount where statutes or contractual provisions transform the fees into substantive rights to which litigants are entitled).

In the instant case, attorney fees are available under West Virginia Code § 46A-5-104, which provides that:

> In any claim brought under this chapter applying to any illegal, fraudulent, or unconscionable conduct or any prohibited debt collection practice, the court may award all or a portion of the costs of litigation, including reasonable attorney fees, court costs and fees, to the consumer.

<u>Id.</u>

Contrary to the Dunlaps' assertion, attorney fees, when allowed as here by an applicable statute, may be included in calculating the amount in controversy.[10] In determining a figure

---

[10]The Dunlaps cite <u>Goldberg v. CPC Int'l, Inc.</u>, 678 F.2d 1365, 1367 (9th Cir. 1982) for the proposition that "potential

15

for reasonableness the court uses $18,000, which represents the maximum attorney fee sum suggested by defendant.[11]

F.  Summary of Damages

If completely successful, the Dunlaps may recover (1) $5,153.84 in compensatory damages; (2) $19,200.00 in statutory penalties, (3) $46,384.56 in punitive damages; and (4) $18,000.00 in attorney fees.  As the Dunlaps' range of recovery can reasonably be projected to reach $88,738.40, the court finds Green Tree has satisfied its burden of demonstrating the amount in controversy exceeds $75,000.

---

attorney's fees may not be used to determine the amount in controversy."  Goldberg is of little help to the Dunlaps, as the court held that attorneys' fees sought by class members could not be aggregated for determining the amount in controversy.  Id. at 1367.  Moreover, the court in Goldberg recognized, "attorney fees can be taken into account in determining the amount in controversy if a statute authorizes fees."  Id.

[11]It is worth noting in a similar action that involved the Dunlaps' counsel, this court concluded that $25,000 was a reasonable preliminary estimate of a plaintiff's attorney fees. McGraw v. Discover Financial Services, Inc., 2005 WL 1785259 (S.D. W.Va. 2005).  Given this recent decision, the defendant's suggestion of $18,000 appears to be a conservative estimate of plaintiffs' attorney fees.

IV.

For the reasons set forth, it is accordingly ORDERED that the Dunlaps' motion to remand be, and it hereby is, denied.

The Clerk is directed to forward copies of this order to all counsel of record.

DATED: November 28, 2005

_____
John T. Copenhaver, Jr.
United States District Judge